LUBIN & ENOCH, P.C.
Nicholas J. Enoch
State Bar No. 016473
Stanley Lubin
State Bar No. 003076
349 North Fourth Avenue
Phoenix, Arizona  85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email:   nick@lubinandenoch.com

KAPLAN YOUNG & MOLL PARRÓN
Matthew S. Sarelson, *pro hac vice* admission forthcoming
Florida State Bar No. 888281
600 Brickell Avenue, Ste. 1715
Miami, Florida  33131-3076
Telephone: (305) 330-6090
Facsimile: (305) 531-2405
Email:   msarelson@kymplaw.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy Smith, Juan J. Aguilar, Thomas Airington II, Curtis Baughman, Wendell R. Bell, Shelly M. Bentley, Donald L. Bergeron, Thomas Boyd, Edmond E. Breshears, Yanai Castillo, David Crotchett, James B. Curtis, Christy Escapule, Greg Flores, Greg E. Gurley, Anthony Kelsh, Dennis J. Kenniker, Tamiko Kuniyuki, Paul T. Lee, David Lopez, Alma D. Mata, Tim McGrady, Joseph McMurdy, Edward G. Paprocki, James Piekarz, Danny J. Rice, Sr., Timothy R. Rice, Bernabe A. Rodriguez, Jr., | No. **COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

1

| | |
|---|---|
| William L. Rudd, Randy Salinas, Cynthia R. Sanchez, Aurelio Sanchez-Cepeda, Eugene L. Shimerdla, William M. Strong, Lorraine Varela, Aniano Vega, Joseph Vella, William C. Webster, Robert A. White, Karen Willis, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | )<br>) |
| Akal Security, Inc., | )<br>) |
| Defendant. | ) |

Plaintiffs Roy Smith ("Smith"), Juan J. Aguilar ("Aguilar"), Thomas Airington II ("Airington"), Curtis Baughman ("Baughman"), Wendell R. Bell ("Bell"), Shelly M. Bentley ("Bentley"), Donald L. Bergeron ("Bergeron"), Thomas Boyd ("Boyd"), Edmond E. Breshears ("Breshears"), Yanai Castillo ("Castillo"), David Crotchett ("Crotchett"), James B. Curtis ("Curtis"), C. Christy Escapule ("Escapule"), Greg Flores ("Flores"), Greg E. Gurley ("Gurley"), Anthony Kelsh ("Kelsh"), Dennis J. Kenniker ("Kenniker"), Tamiko Kuniyuki ("Kuniyuki"), Paul T. Lee ("Lee"), David Lopez ("Lopez"), Alma D. Mata ("Mata"), Tim McGrady ("McGrady"), Joseph McMurdy ("McMurdy"), Edward G. Paprocki ("Paprocki"), James Piekarz ("Piekarz"), Danny J.

Rice, Sr. ("D. Rice"), Timothy R. Rice ("T. Rice"), Bernabe A. Rodriguez, Jr. ("Rodriguez"), William L. Rudd ("Rudd"), Randy Salinas ("Salinas"), Cynthia R. Sanchez ("Sanchez"), Aurelio Sanchez-Cepeda ("Sanchez-Cepeda"), Eugene L. Shimerdla ("Shimerdla"), William M. Strong ("Strong"), Lorraine Varela ("Varela"), Aniano Vega ("Vega"), Joseph Vella ("Vella"), William C. Webster ("Webster"), Robert A. White ("White"), and Karen Willis ("Willis", collectively referred to herein as "Plaintiffs") sue Defendant Akal Security, Inc. ("Akal") for violating the overtime provisions of the Fair Labor Standards Act ("FLSA").

## Parties, Jurisdiction, Venue

1.   Plaintiffs were, at all material times, employees of Akal and non-exempt employees within the meaning of the FLSA.  Plaintiffs are citizens of the United States who reside in Maricopa County, Arizona.  Throughout their employment, Plaintiffs worked as Aviation Security Officers ("ASOs") and Aviation Detention Officers ("ADOs") who were responsible for the supervision of deportees during flights back to their home country. At some point during the relevant time period, Akal reclassified its ASOs as ADOs,

which consisted of substantially the same duties and responsibilities.

2. The following Plaintiffs were employed by Defendant between approximately April 2014 and November 2017, first as ASOs and then as ADOs: Smith, Aguilar, Airington, Bell, Bentley, Boyd, Breshears, Castillo, Crotchett, Curtis, Escapule, Flores, Gurley, Kelsh, Kenniker, Kuniyuki, Lee, Lopez, Mata, McGrady, Paprocki, Piekarz, D. Rice, T. Rice, Rodriguez, Rudd, Sanchez, Sanchez-Cepeda, Shimerdla, Strong, Vega, Vella, Webster, White, and Willis.

3. Plaintiff Baughman has worked as an ADO and an ASO and was employed between approximately April 2014 and June 2017.

4. Plaintiffs Bergeron and Salinas worked as ASOs and was employed between approximately May 2014 and November 2017.

5. Plaintiff McMurdy has worked as an ADO and an ASO and was employed between approximately July 2014 and November 2017.

6. Plaintiff Varela has worked as an ADO and an ASO and was employed between approximately January 2015 and

November 2017.

7. The following Plaintiffs served, for at least part of the relevant time frame, as squad leads: Airington, Bell, Boyd, Crotchett, Mata, Rudd, and Vega.

8. Pursuant to 29 U.S.C. § 216(b) and Arizona Rule of Civil Procedure 23, Plaintiffs also seek to represent all other similarly situated employees who have worked for Defendant and who have not been paid the requisite overtime compensation.

9. Plaintiffs request that they be permitted to serve as representative of those who will later consent to participate in this action and that this action be granted collective action status pursuant to 29 U.S.C. § 216(b).

10. Plaintiffs hereby opt-in to this collective action. *See* attached Plaintiffs' signed opt-in forms numbered Plaintiffs_000001-000040.

11. Plaintiffs presently believe and allege that the class includes approximately fifty-five (55) separate individuals who, between April 1, 2014 and November 30, 2017, worked for Defendant as an ADO or an ASO.

Accordingly, joinder of all members of the class would be impracticable.

12. The claims asserted herein on behalf of Plaintiffs and the class present questions of law and fact common to the class including, in particular, whether Defendant has failed to pay the requisite overtime compensation to its employees.

13. Plaintiffs' claims are typical of the claims of the class.

14. Plaintiffs, as representative parties, will fairly and adequately protect the interests of the class.

15. The prosecution of separate lawsuits by individual members of the class would not only be judicially inefficient but it would create a risk of inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards of conduct for Defendant.

16. Akal is a New Mexico corporation with its principal place of business in New Mexico. It maintains an operations facility in Mesa, Arizona. Plaintiffs worked out of Akal's Mesa facility. Akal is a government

contractor. Akal is a subcontractor to CSI Aviation, Inc. ("CSI"). CSI's contract with the federal government requires it and its subcontractors, including Akal, to comply with all federal, state and local laws and regulations.

17. Akal is an "employer" as defined in 29 U.S.C. § 203(d).

18. Akal is engaged in commerce or in the production of goods for commerce and/or handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce, and the enterprise's annual gross volume of sales or business done is not less than $500,000.

19. Jurisdiction is based on 28 U.S.C. § 1331 (federal question jurisdiction).

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391 inasmuch as a substantial part of the events or omissions giving rise to the claims occurred in this District.

**GENERAL ALLEGATIONS**

21. Plaintiffs worked for Akal either as an ASO or ADO throughout the relevant time period. The compensation rates were set through the collective bargaining process

and apply to all employees within the classification.  In November 2017, the hourly pay rate of ADOs was $20.56. Squad leaders, when acting in a supervisory capacity, were paid one dollar more than their regular rate. Plaintiffs were non-exempt employees.

22.   Plaintiffs were not paid on a salary basis and were not paid any type of flat weekly compensation for all hours worked during the week.  Plaintiffs were hourly employees.

23.   Plaintiffs' job duties included the direct supervision of deportees upon their arrival at Akal and during their transfer onto aircraft for deportation, and in-flight supervision during the trip to the deportee's home country.

24.   After transferring deportees to their home country, Plaintiffs returned with the rest of the flight crew to the United States.  Plaintiffs were compensated for the return flight home.  Returning home on the aircraft was part of the ASOs' and ADOs' job.

25.   While traveling for Akal on the return flight home the ASOs and ADOs provided services during the return

8

flight home, including cleaning up the aircraft, collecting and inventorying supplies, filling out paperwork, participating in team meetings or trainings, and generally preparing for the next mission.

26. Upon information and belief, other ADOs and ASOs had similar responsibilities.

27. Upon being hired at Akal, Plaintiffs were required to sign a contract and offer letter which stated, in relevant part, as followed:

> "There is a mandatory un-paid 1 hour meal period on each shift.  This affects all Aviation Security Officers and Leads operating out of Mesa, AZ, San Antonio, TX and [*sic*] Alexandria, LA and Miami, FL.  This meal period will be taken by all officers and leads on the return leg of each mission.  Exceptions to this rule are the following:
>
> - A mission on which there are detainees on-board for the return leg of the trip; there will be no un-paid meal period and officers will be paid for the entire mission.
>
> - Return leg of a mission is shorter than 90 minutes; there will be no un-paid meal period and officers will be paid for the entire mission.
>
> The "return leg" is defined as the last leg of the mission prior to arriving at the point of origin during which there are no detainees on board and no security duties are required.  During this un-paid meal period, officers and leads will be expected to disengage from work duties and may use their time as they wish.  As

this meal period will be taken in the workplace, professional conduct must be maintained and any violations of company policy will not be tolerated." (*See* Exhibit 2 for a copy of the complete contract).

28.  The ASOs and ADOs were not obligated to take a lunch break or to take a lunch break of a given duration. ASOs and ADOs may not have taken any lunch break, or, for example, may have taken a two minute lunch break to eat a power bar.  The ASOs and ADOs may have taken a lunch break on an outbound flight.  Regardless of whether an ASO or an ADO took a lunch break, and regardless of how long any actual lunch break was, Akal automatically deducted one hour of compensation.

29.  Akal did not keep records for the lunch breaks of any ASOs or ADOs.

30.  Akal has a company-wide policy of mandating that ASOs and ADOs be docked one hour of pay on each return flight back lasting more than 90 minutes to the United States when no deportees are on board.  Plaintiffs did not actually take a "lunch break" and any meal was eaten without being relieved of their duties.  The one-hour deduction was completely arbitrary, as it bore no relationship to any actual lunch break.

10

31. After the ASOs and ADOs signed and submitted a blank timesheet, the lead added in a random one-hour deduction under the guise of a "lunch break." The start and stop time of any "lunch break" was fabricated by the lead.

32. There are numerous employees who were similarly situated and who lost the same one-hour of pay pursuant to Akal's lunch break policy.

33. At all times on the return flight, Plaintiffs and the other ASOs and ADOs were captive on the plane, severely restricting their ability to do any activity for their own benefit. The ASOs and ADOs could not make telephone calls, stream internet or movies, send text messages, run errands, pick up dry cleaning, run to a bank, check on their kids or other loved ones, make doctor appointments or do anything else that would be consistent with a bona fide meal break within the meaning of the FLSA.

34. The ASOs and ADOs were not given bona fide meal breaks within the meaning of the FLSA. Even assuming, *arguendo*, the ASOs and ADOs consumed any food on the plane, they did not do so in adequate facilities provided by the

employer. The deportees – some of whom are murderers and child rapists – routinely defecated, urinated and vomited in their seats. The planes smelled of feces, urine and vomit. The ASOs and ADOs, at times, disinfected the areas, requiring them to handle such bodily fluids. When they did not clean the feces, urine or vomit, the bodily fluids remained until the plane returned to its home base so that an environmental decontamination team could properly clean up the bodily fluids.

35.  To the extent that the unpaid lunch break hours were hours in excess of forty hours per week, Plaintiffs are entitled to time-and-a half for those hours.

36.  Akal has been aware of its violation of the FLSA for many years. In 2013, Akal was sued by several ASOs in Texas as a result of the same lunch break policy at issue here. *See Kankel v. Akal Security, Inc.*, N.D. Tex. Case No. 3:13-cv-2651. A **nationwide** collective action was certified with over 100 opt-ins. *Id*. at D.E. 68-1. The result of that lawsuit was a collective action settlement that included a release of all FLSA claims occurring on or before June 14, 2014. *Id*. (The release in *Kankel* was

limited to releasing claims solely under the FLSA and involved no other statutory or common law claim.)

37. It is possible that one or more potential opt-ins who were part of the settlement of the Texas litigation is or will be opt-ins in this litigation. For those opt-ins, they would be limited to seeking compensation under the FLSA for a violation occurring after the release date of June 14, 2014.

38. Akal was also sued in Florida for an identical FLSA violation. *See Gelber v. Akal Security, Inc.*, S.D. Florida Case No. 16-23170. The district judge in *Gelber* certified the collective statewide and there are currently twenty opt-ins.

39. Akal did not alter its policy with respect to deducting an hour's pay for an alleged lunch break even after the Texas and Florida litigation. Thus, Akal knows it is violating the FLSA and yet it continues to do so even after being sued and paying out funds for its violations.

### Count I - FLSA/Unpaid Overtime

40. Plaintiffs incorporate paragraph 1 to 39.

41. Plaintiffs were non-exempt employees of Akal

within the meaning of the FLSA.  Akal paid Plaintiffs and others similarly situated hourly and not on a salary or weekly basis.

42.   Akal was, at all material times, an employer within the meaning of the FLSA.

43.   Plaintiffs and their colleagues worked for Akal and, in certain weeks, worked in excess of forty hours per week.  It is possible that, in any given week, the unpaid lunch break hours would have been hours in excess of forty hours per week.  For those weeks, the ASOs/ADOs are entitled to overtime pay at a rate of 1.5 times their regular rate of pay.

44.   Plaintiffs were not paid overtime wages by Akal for the time periods stated above.

45.   Akal's violation of the FLSA was willful and intentional.

46.   Plaintiffs and their colleagues are entitled to an award of overtime back pay and liquidated damages equal to the amount of the back pay.

**PRAYER FOR RELIEF**

Plaintiffs pray that they, and others similarly

situated in Arizona, recover from Akal the following:

1. An award of unpaid overtime in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. §§ 207 and 216(b);

2. An award of liquidated damages regarding # 1, *supra*, in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b);

3. An enhancement payment of no less than five hundred dollars ($500) to each named Plaintiff as compensation for the expense they have incurred on behalf of the class;

4. Attorneys' fees pursuant to 29 U.S.C. § 216(b);

5. Court costs and costs of litigation pursuant to 29 U.S.C. § 216(b);

6. A declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that Akal has violated its statutory and legal obligations and deprived Plaintiffs and their colleagues of their rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein; and

7. Such other and further equitable relief as the Court deems just.

DATED this 11th day of April 2018.

                        LUBIN & ENOCH, P.C.
                        KAPLAN YOUNG & MOLL PARRÓN

                By: /s/ Nicholas J. Enoch
                     Nicholas J. Enoch
                     Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all questions raised by the foregoing complaint.

DATED this 11th day of April 2018.

                        LUBIN & ENOCH, P.C.
                        KAPLAN YOUNG & MOLL PARRÓN

                By: /s/ Nicholas J. Enoch
                     Nicholas J. Enoch
                     Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April 2018, I electronically transmitted the attached Complaint and Jury Demand to the Clerk's Office using the ECF System for filing.

/s/ Stacey L. Lucas

F:\Law Offices\client directory\Smith, Roy\Pleadings\2018-4-11 (6120-001) Complaint.docx