**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roy Smith, et al., | No. CV-18-01117-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| AKAL Security Incorporated, | |
| Defendant. | |

Pending before the Court is Plaintiffs' Motion to Proceed Conditionally as a Collective Action. (Doc. 22, "Mot."). The Court has now considered the Motion, Defendant's Response (Doc. 23, "Resp."), and Plaintiffs' Reply (Doc. 24, "Reply") along with relevant case law. The Court elects to resolve the Motion without oral argument. *See* L.R. Civ 7.2(f).

**BACKGROUND**

Forty named plaintiffs ("Plaintiffs") bring this action against their former employer, Defendant Akal Security, Inc. (Doc. 1). Plaintiffs worked for Defendant, a government contractor, as Air Security Officers ("ASOs"), a position later renamed Aviation Detention Officers ("ADOs"), for various times between April 2014 and November 2017.[1] Plaintiffs were all hourly employees, responsible for the supervision of deportees while they were in Defendant's custody and control, including during their transfer onto an aircraft for deportation and during the trip to the deportees' home country. After transferring deportees

---

[1] For purposes of this order, the Court will use the term "ADOs" to refer to both "ASOs" and "ADOs."

to their home countries, Plaintiffs returned with the rest of the flight crew to the United States. Plaintiffs were compensated for their time on the return flight, but pursuant to Defendant's policy, Plaintiffs were automatically docked one hour of pay for a meal break on each return flight that lasted more than ninety minutes.

Plaintiffs commenced this action on April 11, 2018 alleging violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"). (Doc. 1). Plaintiffs allege that during the return flights in which they were docked one hour of pay, they were not given bona fide meal breaks within the meaning of the FLSA, and to the extent that the unpaid meal breaks were hours worked in excess of forty hours per week, Plaintiffs allege that they are entitled to overtime pay for those hours. Plaintiffs now seek conditional certification of a proposed collective action group defined as "all former [ADOs] or [ASOs], or those who had substantially the same duties and responsibilities as Plaintiffs, who were employed by Defendant between April 11, 2015 and November 30, 2017, were based in Mesa, Arizona, and had one-hour lunch breaks deducted from their pay, pursuant to Defendant's Meal-Period Deduction and Timekeeping Policies." Plaintiffs also ask the Court to (1) compel Defendant to furnish the names and contact information of potential plaintiffs; (2) authorize Plaintiffs to circulate the proposed Notice and Opt-In Consent Forms; (3) prohibit Defendant from engaging in communications or activities that may improperly influence, mislead or discourage potential plaintiffs from joining this action; and (4) appoint Plaintiffs' counsel as counsel for the members of the collective action.

## DISCUSSION

### I. Legal Standard

"The FLSA . . . was enacted 'to protect all covered workers from substandard wages and oppressive working hours.'" *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, (1981)). "The FLSA's minimum wage and overtime provisions are central among the protections the Act affords to workers." *Id.* Section 216(b) provides a mechanism by which plaintiffs can bring a collective action:

> An action to recover the liability prescribed in [this subsection] may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The statute makes clear that "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). A collective action under 216(b) is distinct from a class action under Fed. R. Civ. P. 23. *Id.* at 1101. Unlike in the Rule 23 context, "[p]reliminary certification in the FLSA context," also known as "provisional" or "conditional" certification, "does not 'produce a class with an independent legal status[ ] or join additional parties to the action.'" *Id.* (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). "The sole consequence of a successful motion for preliminary certification is the sending of court-approved written notice to workers who may wish to join the litigation as individuals." *Id.* (internal quotation marks and citation omitted). Courts typically address whether the collective mechanism is appropriate in an FLSA action at two points in the litigation. First, in early stages, plaintiffs often move for preliminary certification. *Id.* at 1109. The district court's analysis during this stage typically focuses on the pleadings, but may also include supplemental declarations. *Id.* The level of consideration given by the district court is "lenient," and is "sometimes articulated as requiring substantial allegations, sometimes as turning on a reasonable basis, but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* (internal quotation marks and citations omitted). If the court grants the plaintiffs' motion for preliminary certification, the second stage comes after the close of discovery, when an employer may move for "decertification" on the theory that "plaintiffs' status as 'similarly situated' was not borne out by the fully developed record." *Id.* at 1100. The standard on decertification is more similar to a summary judgment standard, s*ee id.* at 1119, and "[d]etermining whether a

collective action is appropriate is within the discretion of the district court," *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).

Section 216(b) does not define the term "similarly situated," and up until recently, the Ninth Circuit had not spoken to the issue. In *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), the Ninth Circuit interpreted the term "similarly situated," disapproving of the test that had been used up until that point by a majority of courts—the "ad hoc" test.[2] Under that test, the court considered "the factual *differences* between the party plaintiffs and the desirability of collective treatment." *Id.* at 1113. But the Ninth Circuit criticized that test as explaining only what the term "similarly situated" *does not* mean, rather than what it *does* mean. *Id.* at 1114. The Ninth Circuit then explained that the "natural answer to the proper inquiry—what 'similarly situated' means—is, in light of the collective action's reason for being within the FLSA, that party plaintiffs must be alike with regard to some *material* aspect of their litigation." *Id.* The panel explained that the FLSA's goal of allowing "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," can only be "achieved—and therefore, a collective can only be maintained—to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims." *Id.* "[W]hat matters is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims[.]" *Id.* at 1115. Therefore, "[i]f the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* at 1114.

## II. Analysis

The Court considers the pleadings and other evidence submitted to determine whether potential collective action members are "similarly situated" to Plaintiffs. Per the Ninth Circuit's holding in *Campbell*, the Court specifically looks at whether the prospective parties are "alike with regard to some *material* aspect of their litigation." *Id.*

---

[2] Notwithstanding that the Ninth Circuit issued *Campbell* on September 13, 2018—before Plaintiffs filed the instant motion—neither Plaintiffs nor Defendant reference this controlling decision in their filings.

- 4 -

The standard used is "lenient," and "loosely akin to a plausibility standard." *Id.* at 1109.

Based on the *Campbell* test, the Court concludes that the inquiry here is whether Plaintiffs substantially allege a policy, which is applicable to all Mesa based ADOs, to dock one hour of potential overtime pay under the meal break policy without the ADOs receiving bona fide meal breaks. The Ninth Circuit's analysis in *Campbell* supports this conclusion. In *Campbell*, plaintiff police officers moved for conditional certification of a collective action alleging "a pervasive, unwritten policy discouraging the reporting of overtime." *Id.* at 1099. After notice was sent to all potential collective action members and after years of discovery, the court granted defendant's motion for "decertification." *Id.* The Ninth Circuit noted that the plaintiffs would have been "similarly situated" if the record supported that "there was a tacit, Department-wide policy discouraging the reporting of earned overtime." *Id.* at 1116. The panel further stated that this would have made the officers "alike in a way material to their litigation," and that such a likeness "would have affected the ultimate findings regarding the occurrence of unpaid overtime . . . , thus collectively advancing the litigation." *Id.* In looking at this inquiry, the Court does not address in any way whether the claims alleged by Plaintiffs have any merit.

Plaintiffs here allege that the declarations of three named plaintiffs submitted with the Motion demonstrate that Plaintiffs are "similarly situated" to other potential members of the proposed collective action. (Mot. at 12). Plaintiffs allege that they are similarly situated because they were all employed by Defendant as ADOs, were based in Mesa, Arizona, had substantially the same job duties and responsibilities, and were subject to the same policy handbook and collective bargaining agreement. (Mot. at 12). Plaintiffs further allege that they were "uniformly subject to Akal's illegal practice and written policy of having one-hour lunch breaks deducted from their pay . . . regardless of whether they actually took a lunch break, or how long that lunch break was." (Mot. at 12).

The Court first looks to the Complaint. Plaintiffs allege ADOs "provided services during the return flight home, including cleaning up the aircraft, collecting and inventorying supplies, filling out paperwork, participating in team meetings or trainings,

and generally preparing for the next mission." (Doc. 1 ¶ 25). But merely providing services on part of the flight, which was at least ninety minutes, does not address the *material* aspect of their litigation—whether ADOs received a bona fide meal break. Plaintiffs also allege the following: (1) ADOs "were not obligated to take a lunch break or to take a lunch break of a given duration", (2) ADOs "may not have taken any lunch break, or, for example, may have taken a two minute lunch break to eat a power bar," (3) "[r]egardless of whether an [ADO] took a lunch break, and regardless of how long any actual lunch break was, [Defendant] automatically deducted one hour of compensation," and (4) "Plaintiffs did not actually take a 'lunch break' and any meal was eaten without being relieved of their duties." (Doc. 1 ¶¶ 28, 30). Thus, forty ADOs allege that they did not take lunch breaks where they were relieved of their duties.

The Court also considers that three named Plaintiffs submitted declarations with the Motion. Only the declaration of Plaintiff Roy Smith adds substantially to the *material* allegations in the Complaint. Smith states that "[o]n several occasions, [supervisor] Coppock announced a lunch break was to start and then he proceeded to initiate a training for all ADOs," and that at least two supervisors instructed him "to submit blank, signed timesheets," and that the time entered "did not correlate to the actual time [he] was available and ready to be engaged to work, if and when [he] took a lunch break or the time [he] personally stopped working." (Mot., Exhibit C ¶¶ 15–16). Plaintiff Varela's declaration states that "[i]n the event [she] did take a break, [Defendant] deducted one hour of pay regardless of how long the lunch break actually was or how long [she] was relieved from duty." (Mot., Exhibit E ¶ 11). Plaintiff Vega's declaration does not clearly state that he was docked pay for meal breaks that he did not take. (Mot., Exhibit D). The Court finds that the declarations overall do not provide much support to the contention that all ADOs were subject to the loss of one hour of potential overtime pay under the meal break policy without receiving bona fide meal breaks, but that at least two of the declarations do have some evidentiary value.

The majority of Defendant's Response argues that Plaintiffs have only alleged that

they were subject to the same meal period policy, and that such policy is not on its face illegal. The Court agrees with Defendant that "[a]n automatic meal deduction is not *per se* illegal under the FLSA." *Alonzo v. Akal Sec., Inc.*, No. CV-17-00836-PHX-JJT, 2017 WL 5598227, at *3 (D. Ariz. Nov. 21, 2017); *see also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) ("An automatic meal deduction system is lawful under the FLSA."); *Harp v. Starline Tours of Hollywood, Inc.*, No. 2:14-cv-07704, 2015 WL 4589736, at *6 (C.D. Cal. July 27, 2015) (same); *Gessele v. Jack in the Box, Inc.*, No. 3:10-cv-960-ST, 2013 WL 1326563, at *23 (D. Or. Jan. 28, 2013) (same). But Plaintiffs also allege that that they "did not actually take a 'lunch break' and any meal was eaten without being relieved of their duties." (Doc. 1 ¶ 30). Furthermore, Defendant's Response extensively argues the merits of the case, rather than focusing on the narrow issue before the Court. As noted above, the inquiry with this motion is limited, and at this stage, the Court does not review the underlying merits of the action. *Hart v. U.S. Bank NA*, No. CV 12-2471-PHX-JAT, 2013 WL 5965637, at *3 (D. Ariz. Nov. 8, 2013).

Defendant also cites to multiple district court decisions in support of its position, including one decided recently in this district involving the same Defendant and similar allegations. (Resp. at 6–7) (citing *Alonzo v. Akal Sec., Inc.*, No. CV-17-00836-PHX-JJT, 2017 WL 5598227 (D. Ariz. Nov. 21, 2017)). However, that case is different because the Court rejected the sole Plaintiff's motion for certification stating that Plaintiff had made only a "bare-bones" evidentiary showing because "[t]he Complaint itself provide[d] little to no factual allegations in support of the assertion" that the others were similarly situated and the plaintiff only submitted his own declaration with the motion—even under a lenient standard, the "sole declaration [was] insufficient to show a putative class of similarly situated individuals." Here, while only one of the three declarations provides much evidentiary value regarding whether potential plaintiffs were similarly situated, forty named Plaintiffs signed the complaint. For now, the information presented by Plaintiffs is adequate to warrant conditional certification for purposes of notifying potential plaintiffs of the suit.

### III. Statute of Limitations

Defendant objects to the three-year lookback period proposed by Plaintiffs. The FLSA provides that an action for unpaid overtime compensation "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Defendant argues that the lookback period should be only two years, and not three years as proposed by Plaintiffs. The Complaint alleges a willful violation. (Doc. 1 ¶ 45). Due to the relative lack of discovery and the lenient standard for conditional class certification, the Court will apply the three-year period to the notice. The Court's decision to give notice for the three-year time period does not indicate a finding of willfulness. Should Defendant file a decertification motion in the future, the Court will then, in light of evidence produced during discovery, reassess whether the two or three-year statute of limitations should apply to Plaintiffs' claims.

### IV. Discovery

Plaintiffs request that the Court compel Defendant to produce the names, addresses, and email addresses of all "similarly situated" employees so that they may notify them of the collective action. The Supreme Court has approved of a district court's ordering discovery of similar information, *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), and courts routinely grant this request as a matter of course, s*ee, e.g., Foschi v. Pennella*, No. CV-14-01253-PHX-NVW, 2014 WL 6908862, at *7 (D. Ariz. Dec. 9, 2014) (ordering defendants to provide Plaintiff with names and last known addresses of similarly situated employees). Defendant is ordered to provide Plaintiffs with the names and last known addresses and email addresses of all "similarly situated" individuals so that Plaintiffs may notify them of the collective action.

### V. Notice

Plaintiffs have also submitted a proposed notice (Mot., Exhibit F), to which Defendant has objected, asserting *inter alia* that the notice contains "inflammatory" language, (Resp. at 15–17). The district court has discretion regarding the form and content

- 8 -

of the notice, and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174.  The Court agrees with Defendant that changes are needed to the proposed notice.  Defendant has requested an order for the parties to confer and agree on the notice terms. (Resp. at 17).  Accordingly, the Court orders the parties to meet and confer regarding (1) the language of the notice and (2) the timing and method of notifying potential collective action members.  The parties are ordered to file a joint proposed notice for the Court to review within 30 days from the date of this order.  If the parties are unable to reach an agreement regarding the notice, such disputes may be noted in the filing or the parties may file separate notices.[3]

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Proceed Conditionally as a Collective Action, (Doc. 22), is **GRANTED** to the extent that it conditionally certifies the collective action of "all former ADOs or ASOs, or those who had substantially the same duties and responsibilities as Plaintiffs, who were employed by Defendant between April 11, 2015 and November 30, 2017, were based in Mesa, Arizona, and had one-hour lunch breaks deducted from their pay, pursuant to Defendant's Meal-Period Deduction and Timekeeping Policies."

**IT IS FURTHER ORDERED** that Defendant provide Plaintiffs with the names and last known addresses and email addresses of all "similarly situated" individuals so that Plaintiffs may notify them of the collective action.

**IT IS FURTHER ORDERED** that the parties shall meet and confer to prepare a proposed stipulated notice, as well as a proposed schedule for sending notice, and submit the same to the Court no later than 30 days from the date of this order for approval prior to circulation of the notice.  If the parties are unable to reach an agreement regarding the

---

[3] Plaintiffs also summarily request that the Court issue an order (1) "prohibiting Akal from engaging in communications or activities that may improperly influence, mislead or discourage potential plaintiffs from joining this action" and (2) "appointing Plaintiffs' counsel as counsel for the members of the collective action." (Mot. at 2).  Plaintiffs fail to include any further discussion or legal authority for these requests.  As such, the Court will not address either request.

notice provisions, such disputes may be noted in the filing or the parties may make separate filings.

    Dated this 1st day of May, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge